UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHELET CHARLES, :
               Plaintiff, :
: **OPINION AND ORDER**
v. :
: 18 CV 883 (VB)
THE UNITED STATES OF AMERICA, :
               Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Michelet Charles brings this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2674, alleging that actions of the Immigration and Customs Enforcement Agency ("ICE") of the United States Department of Homeland Security give rise to claims for negligence, negligent infliction of emotional distress, and negligent supervision and training.

      Now pending is defendant's motion to dismiss the amended complaint pursuant to Rule 12(b)(1). (Docs. ##16, 25).

      For the following reasons, the motion is DENIED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b).

**BACKGROUND**

      For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable, non-argumentative inferences in plaintiff's favor, as set forth below.

      Plaintiff, a lawful permanent resident of the United States, alleges he was diagnosed with bipolar and schizoaffective disorders in 1984, when he was about twenty-five years old. For the next twenty or twenty-one years, plaintiff managed his illnesses through consistent mental

1

healthcare, including a prescription medication regimen. He worked in the restaurant industry, raised a family, including four daughters, and otherwise contributed to his community. During that time, plaintiff went without medication and was hospitalized on three occasions, in 1996, 2001, and 2004, either because he could not afford the medication or because he experienced extreme side effects.

On approximately July 25, 2014, ICE arrested and detained plaintiff, and placed him at the Orange County Correctional Facility ("OCCF"). "ICE places hundreds of detainees in ICE detention at [OCCF] each year" pursuant to an Inter-Governmental Services Agreement ("IGSA") between ICE and Orange County, which was last renewed in 2015. (Doc. #22 ("Am. Compl.") ¶ 37; see also Doc. #18 Ex. A).

Medical personnel at OCCF diagnosed plaintiff as having "bipolar disorder with psychotic features." (Am. Compl. ¶ 70). While confined at OCCF, plaintiff met with a psychiatrist every three weeks and was prescribed daily medication. He remained psychiatrically stable "for most of the time" he was at OCCF. (Id. ¶ 74).

Plaintiff alleges ICE had direct custody over plaintiff several times after initially detaining him: when plaintiff attended immigration hearings at the Varick Street Immigration Court, including for a bond hearing on September 16, 2014, and master calendar hearings on October 1, 2014, December 10, 2014, February 19, 2015, and March 26, 2015. According to plaintiff, his "mental competency was explicitly raised as an issue" at the December 10, 2014, master calendar hearing. (Am. Compl. ¶ 78). On July 22, 2015, plaintiff was again transferred to ICE's direct custody for multiple hours to attend his merits hearing. Plaintiff alleges, "Prior to releasing an individual from ICE detention, ICE conducts a formal review of relevant paperwork,

terms of releases, and other information pertaining to the individual's detention and release," a process that takes approximately thirty minutes to an hour. (Am. Compl. ¶ 97).

Plaintiff alleges he obtained immigration relief at the July 22 hearing and was released from civil immigration detention. Despite knowing plaintiff had a severe mental illness, according to plaintiff, "ICE simply dumped [plaintiff] on the streets of Lower Manhattan with nothing more than his identification." (Am. Compl. ¶ 8). Specifically, plaintiff alleges ICE officials failed to provide him or his attorney with his clothing, commissary money, or a "discharge plan." (Id. ¶ 96). According to plaintiff, "[a]dequate discharge planning includes providing a patient with a supply of interim medication and summary of medical records; exchanging a patient's medical records with local mental health agencies; renewing or evaluating for renewal any prescribed medications; and a continuity of care plan including referrals to community-based mental health providers." (Id. ¶ 129). Plaintiff alleges ICE did not provide plaintiff with any aspect of the discharge plan, including interim medication, medical records, or referral to a mental healthcare facility, the last of which was expressly noted in his immigration paperwork.

According to the amended complaint, after the July 22 hearing, plaintiff's attorney discussed plaintiff's release and his need for interim medication with an ICE deportation officer. The officer stated ICE did not have a supply of medication for plaintiff, and that he should return to OCCF (some sixty-five miles away) to obtain a supply and his other belongings. When plaintiff and his daughter returned to OCCF the next day, an OCCF employee refused to provide plaintiff's medication. The employee stated that "the ICE employee who had transported [plaintiff] to Varick Street Immigration Court was responsible for providing a continuing supply of medication," and he was not permitted to provide medication to individuals no longer

3

confined at OCCF. (Am. Compl. ¶ 107). Plaintiff's attorney then contacted the ICE deportation officer and requested ICE supply plaintiff with medication, but the officer "ignored her inquiry." (Id. ¶ 109).

Plaintiff alleges by August 4, 2015, his psychosis was so severe that "he lost contact with reality." (Am. Compl. ¶ 116). Plaintiff's family called 911 for emergency medical assistance. The police responded and transported plaintiff to the hospital, where plaintiff spent more than two months undergoing "intense medical treatment." (Id. ¶ 120).

**DISCUSSION**

I.  Standard of Review

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). When a

4

factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." Zappia Middle E. Constr. Co., Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (internal citation omitted).

II.     Independent Contractor Exception

Defendant argues it is immune from plaintiff's negligence and negligent infliction of emotional distress claims under the independent contractor exception to jurisdiction under the FTCA because ICE delegated to OCCF its duty to provide plaintiff with medical care.

The Court disagrees.

"The Federal Government is generally immune from tort suits except where it has waived sovereign immunity." Esgrance v. United States, 2018 WL 2943222, at *1 (S.D.N.Y. June 11, 2018). One such waiver, pursuant to the FTCA, is for money damage suits for:

> personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). "Employee of the government" includes "officers or employees of any federal agency" and "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." Id. § 2671. But "the term 'Federal agency' . . . does not include any contractor with the United States." Id.

To determine whether an entity is an independent contractor, courts look to whether the government (i) "maintained control of the detailed performance of the contractor" or (ii) "supervised its day-to-day operations." Powell v. Siedlecki Constr. Co., 2016 WL 6996168,

5

at *2 (S.D.N.Y Nov. 29, 2016) (quoting Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997) (per curiam) (internal quotation marks and alterations omitted)). "The question is appropriately resolved by looking at the language of the contract between the Government and the contracting entity." Esgrance v. United States, 2018 WL 2943222, at *2 (internal quotation omitted). "The independent contractor exception, however, has no bearing on the United States' FTCA liability for its own acts or omissions." Edison v. United States, 822 F.3d 510, 518 (9th Cir. 2016).

Here, plaintiff alleges defendant is liable based on its own negligent actions, rather than those of OCCF, who is indisputably an independent contractor. Plaintiff alleges ICE had direct custody over plaintiff several times from when ICE initially detained him in July 2014, including in the final hours before he was released, when there was a last opportunity to ensure plaintiff had a discharge plan. Further, according to plaintiff, ICE (i) knew of plaintiff's mental illnesses because they were raised at the December 10, 2014, immigration hearing, and (ii) conducted a formal review of plaintiff's paperwork, which presumably would have indicated plaintiff's mental illnesses. Moreover, an ICE officer specifically refused to provide plaintiff with interim medication immediately after he was released and allegedly ignored plaintiff's attorney's second request for medication.

Defendant argues ICE delegated any relevant duty to provide plaintiff with medical care to OCCF. The Court is not persuaded. First, the IGSA between Orange County and ICE only requires OCCF to provide ICE detainees with "on-site" health services. (IGSA at 5). But here, the alleged failure to provide a discharge plan arguably occurred off-site, and thus would not fall within the duties delegated under the IGSA. Cf. Harvey v. United States, 2017 WL 2954399, at *4 (S.D.N.Y. 2017) (analyzing IGSA between Orange County and ICE and holding ICE did not

at *2 (S.D.N.Y Nov. 29, 2016) (quoting Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997) (per curiam) (internal quotation marks and alterations omitted)). "The question is appropriately resolved by looking at the language of the contract between the Government and the contracting entity." Esgrance v. United States, 2018 WL 2943222, at *2 (internal quotation omitted). "The independent contractor exception, however, has no bearing on the United States' FTCA liability for its own acts or omissions." Edison v. United States, 822 F.3d 510, 518 (9th Cir. 2016).

Here, plaintiff alleges defendant is liable based on its own negligent actions, rather than those of OCCF, who is indisputably an independent contractor. Plaintiff alleges ICE had direct custody over plaintiff several times from when ICE initially detained him in July 2014, including in the final hours before he was released, when there was a last opportunity to ensure plaintiff had a discharge plan. Further, according to plaintiff, ICE (i) knew of plaintiff's mental illnesses because they were raised at the December 10, 2014, immigration hearing, and (ii) conducted a formal review of plaintiff's paperwork, which presumably would have indicated plaintiff's mental illnesses. Moreover, an ICE officer specifically refused to provide plaintiff with interim medication immediately after he was released and allegedly ignored plaintiff's attorney's second request for medication.

Defendant argues ICE delegated any relevant duty to provide plaintiff with medical care to OCCF. The Court is not persuaded. First, the IGSA between Orange County and ICE only requires OCCF to provide ICE detainees with "on-site" health services. (IGSA at 5). But here, the alleged failure to provide a discharge plan arguably occurred off-site, and thus would not fall within the duties delegated under the IGSA. Cf. Harvey v. United States, 2017 WL 2954399, at *4 (S.D.N.Y. 2017) (analyzing IGSA between Orange County and ICE and holding ICE did not

at *2 (S.D.N.Y Nov. 29, 2016) (quoting Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997) (per curiam) (internal quotation marks and alterations omitted)). "The question is appropriately resolved by looking at the language of the contract between the Government and the contracting entity." Esgrance v. United States, 2018 WL 2943222, at *2 (internal quotation omitted). "The independent contractor exception, however, has no bearing on the United States' FTCA liability for its own acts or omissions." Edison v. United States, 822 F.3d 510, 518 (9th Cir. 2016).

Here, plaintiff alleges defendant is liable based on its own negligent actions, rather than those of OCCF, who is indisputably an independent contractor. Plaintiff alleges ICE had direct custody over plaintiff several times from when ICE initially detained him in July 2014, including in the final hours before he was released, when there was a last opportunity to ensure plaintiff had a discharge plan. Further, according to plaintiff, ICE (i) knew of plaintiff's mental illnesses because they were raised at the December 10, 2014, immigration hearing, and (ii) conducted a formal review of plaintiff's paperwork, which presumably would have indicated plaintiff's mental illnesses. Moreover, an ICE officer specifically refused to provide plaintiff with interim medication immediately after he was released and allegedly ignored plaintiff's attorney's second request for medication.

Defendant argues ICE delegated any relevant duty to provide plaintiff with medical care to OCCF. The Court is not persuaded. First, the IGSA between Orange County and ICE only requires OCCF to provide ICE detainees with "on-site" health services. (IGSA at 5). But here, the alleged failure to provide a discharge plan arguably occurred off-site, and thus would not fall within the duties delegated under the IGSA. Cf. Harvey v. United States, 2017 WL 2954399, at *4 (S.D.N.Y. 2017) (analyzing IGSA between Orange County and ICE and holding ICE did not

delegate its duty to provide detainees with adequate and timely off-site medical care). Second, plaintiff was not in OCCF's care and custody when the alleged negligence occurred. Thus, it is questionable whether the IGSA even applied in the first place. Third, even if it were clear that ICE had delegated its duty to OCCF to provide plaintiff a discharge plan, as discussed above, defendant cannot immunize itself from suits arising from its own negligence by delegating its duty to provide medical care to an independent contractor. Cf. Logue v. United States, 412 U.S. 521 (1973) (directing court of appeals to consider the "distinct question" regarding federal employee's negligence).

Accordingly, the Court will not dismiss plaintiff's negligence and negligent infliction of emotional distress claims for lack of subject matter jurisdiction.[1]

III. Discretionary Function Exception

Defendant also argues the discretionary function exception to the FTCA's limited waiver of sovereign immunity deprives the Court of subject matter jurisdiction over plaintiff's negligent supervision claim.

The Court disagrees.

The discretionary function exception exempts the FTCA's waiver of sovereign immunity from:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the

---

[1] In its reply brief, defendant raises several new arguments attacking the sufficiency of plaintiff's allegations to state claims for relief. As to these arguments, defendant requests the Court construe its motion to dismiss as one for failure to state a claim under Rule 12(b)(6). The Court declines to do so, as converting the motion would be unfair and prejudicial to plaintiff, who has not had an opportunity to respond. See, e.g., Simone v. United States, 2010 WL 11632765, at *16 (E.D.N.Y. June 17, 2010) ("The Court will not convert this 12(b)(1) motion into a 12(b)(6) because Plaintiffs have not had an opportunity to brief the issues on whether they have stated claims upon which relief can be granted.").

failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "To determine whether the discretionary function exception applies, courts employ the so-called Berkovitz-Gaubert test." Simmons v. United States, 2018 WL 1474393, at *4 (S.D.N.Y. Mar. 23, 2018), , appeal filed No. 18-909 (2d Cir. 2018). "Under the Berkovitz-Gaubert test, the discretionary function exception applies 'only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis.'" Id. (quoting Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000)). "Where the alleged 'type of negligence' arises from factors such as inattentiveness, laziness, absentmindedness or other such 'conduct unrelated to any plausible policy objectives,' it is not shielded by the discretionary function exception." Ben v. United States, 160 F. Supp. 3d 460, 473 (N.D.N.Y. 2016) (quoting Coulthurst v. United States, 214 F.3d 106, 110–111) (2d Cir. 2000)).

Plaintiff sufficiently alleges ICE's conduct in failing to supervise its own employees was not grounded in consideration of public policy or susceptible to policy analysis.[2] Based on plaintiff's allegations, ICE officials did not exercise "judgment as to which [] a range of permissible courses is the wisest," United States v. Gaubert, 499 U.S. 315, 325 (1991), nor were they required to "balance competing interests" or determine what "was most efficient and effective," Simmons v. United States, 2018 WL 1474393, at *4. According to plaintiff, ICE officials simply were inattentive, lazy, or absentminded in failing to provide plaintiff with a

---

[2]  Plaintiff does not oppose defendant's motion to the extent defendant argues the discretionary function exception bars plaintiff's claim that ICE was negligent in selecting or supervising OCCF.

8

discharge plan. Indeed, the 2011 ICE Detention Standards—regardless of whether they bind ICE officials or just facilities housing detainees—indicate ICE itself recognizes detainees should receive discharge plans. (Am. Compl. ¶ 41 ("Detainees, who have received medical care, released from custody or removed shall receive a discharge plan, a summary of medical records, any medically necessary medication and referrals to community-based providers as medically-appropriate.")).

Defendant also argues in its reply brief that a claim for negligent supervision under New York law, by definition, cannot proceed against the government because it requires an employee to act outside the scope of his employment, whereas the FTCA waives sovereign immunity only for those acts committed within the scope of employment. Even if defendant had properly raised its argument in its opening brief, see Playboy Enterprises, Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.") (collecting cases), the Court would reject it. Defendant would still be liable under a negligent supervision claim if an ICE official, acting within the scope of his or her employment, failed to supervise an employee who acted outside the scope of employment.

Accordingly, the Court declines to dismiss plaintiff's negligent supervision claim for lack of subject matter jurisdiction.

## CONCLUSION

The motion to dismiss is DENIED.

Defendant shall file an answer by April 10, 2019.

The Clerk is instructed to terminate the motions. (Doc. ##16, 25).

Dated: March 27, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge